UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENDA CANNON,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMUNICATION COMPONENTS,<br>INC., *et al.*,<br><br>        Defendants. | CASE NO. C19-804RSM<br><br>ORDER GRANTING IN PART<br>DEFENDANTS' MOTION TO DISMISS |

## I.    INTRODUCTION

This matter is before the Court on Defendants' Brief in Support of Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b), or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Motion to Dismiss").[1] Dkt. #33. Defendants Communication Components, Inc. ("CCI"), Dennis Nathan ("Nathan"), and Pat Cerulli ("Cerulli") argue that dismissal of Plaintiff's employment discrimination action is appropriate because the Court lacks personal jurisdiction over the Defendants and because this is not a proper venue. Alternatively, Defendants seek to transfer the case for convenience to New Jersey under 28 U.S.C. § 1404(a). Plaintiff Brenda Cannon opposes the Motion. For the reasons stated below, the Court ultimately

---

[1] Defendants have requested oral argument. Dkt. #33. However, the Court finds oral argument unnecessary to its resolution of the matter. LCR 7(b)(4).

ORDER – 1

agrees that the most appropriate venue for this action is the United States District Court for the District of New Jersey and transfers the action.

## II. BACKGROUND

Plaintiff Brenda Cannon is a Washington resident and former employee of CCI. Dkt. #24 at ¶¶ 1–5. CCI is a New Jersey corporation, with a national and international reach, that "manufactures and sells equipment used by wireless service providers, such as antennas, amplifiers and amplifier accessories, filters, and antenna-sharing equipment, to help improve the wireless carriers' networks." *Id.* at ¶¶ 2, 10. Nathan is the President and Chief Technology Officer of CCI and resides in New Jersey. Dkt. #19 at ¶ 1. Cerulli is CCI's Vice President of Sales and also resides in New Jersey. Dkt. #18 at ¶ 1.

CCI recruited and hired Cannon in November 2014 to be the Sales Manager for CCI's Northwest Region. Dkt. #24 at ¶ 5. That "sales region included Northern California, Oregon and Alaska as well as Washington." *Id.* at ¶ 6. Cannon's position required her to travel within the region and she arranged sales meetings with wireless services providers throughout the region, including within Washington. *Id.* at ¶¶ 5–6. Cannon's contract with CCI required her to be "based out of a home office located in the Region." *Id.* at ¶ 5. Cannon lives in Cle Elum, Washington, located in Kittitas County. Dkt. #35 at ¶ 5.

In June 2018, CCI terminated Cannon's employment. Dkt. #24 at ¶ 6. Thereafter, Cannon initiated this action, asserting that Defendants had violated Title VII, Washington law, and New Jersey law by discriminating and retaliating against her. *Id.* at ¶ 8. Additionally, Cannon asserted claims for breach of contract and related common law claims. *See generally id.*

//

//

//

ORDER – 2

### III. DISCUSSION

**A. Personal Jurisdiction**

**1. Legal Standard**

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). For a motion based on written materials rather than on an evidentiary hearing, the plaintiff's pleadings and any affidavits need only make a prima facie showing of facts supporting personal jurisdiction. *Id.* Any conflicts over jurisdictional facts must be resolved in the plaintiff's favor. *Id.*

Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), federal courts ordinarily follow state law in resolving issues of personal jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Washington's long-arm statute extends personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.*, 95 Wash. App. 462, 975 P.2d 555, 558 (1999). The Court is left, therefore, to determine whether exercising personal jurisdiction comports with federal constitutional requirements. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004).

The Due Process Clause of the United States Constitution protects a defendant's liberty interest by only subjecting a defendant to binding judgements in forums with which the defendant has established "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). General jurisdiction exists over a non-resident defendant when there is

"continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801.

Specific personal jurisdiction turns "on the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). That is, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). More specifically, the Ninth Circuit applies a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)) (quotation marks and alteration omitted). The plaintiff has the burden of proving the first two prongs. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

**2. Defendants Are Within This Court's Personal Jurisdiction**

While the parties have briefed whether Defendants are subject to general personal jurisdiction, the Court does not find the issue to be in serious dispute. CCI, Nathan, and Cerulli are not subject to the Court's general personal jurisdiction. Suffice it to say, Plaintiff has not established that CCI has such "continuous and systematic general business contacts" that it is

ORDER – 4

essentially at home in Washington.[2] *Schwarzenegger*, 374 F.3d at 801. Likewise, Nathan and Cerulli are residents of New Jersey with limited contact with Washington. Dkt. #18 at ¶¶ 1, 5, and 12; Dkt. #19 at ¶¶ 1–3. The Court therefore turns to specific jurisdiction.

Specific personal jurisdiction is an inherently fact based and muddled consideration. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). The consideration can easily be made more complicated by imprecise arguments and case law taken out of context. Here, for instance, Plaintiff attempts to establish the Court's specific personal jurisdiction over CCI by lumping together the sum of CCI's business contacts with Washington. This includes looking to CCI's Washington customers, meetings occurring with those and other perspective customers in the state, and its sales to customers in the State. Dkt. #34 at 6–8. Plaintiff may be correct that these business activities are sufficient to establish the Court's personal jurisdiction for claims arising from *those* business activities. But Plaintiff's claims arise from the employment relationship she formed with CCI, actions by CCI during that employment, and the termination of her employment. Plaintiff must establish that CCI purposefully availed itself or purposefully directed its actions at Washington with regard to its employment relationship with Plaintiff.[3]

---

[2] Defendants establish that all CCI's records are maintained in New Jersey and that

> CCI is not registered to do business in Washington, it has not appointed an agent for service of process in Washington, it does not maintain a satellite office in Washington, it does not rent office space in Washington, and it maintains no United States Post Office Box, mailing address, or bank accounts [in Washington].

Dkt. #18 at ¶¶ 3–4. Further, CCI has only four Washington customers, generating "less than 1% of CCI's annual revenues." *Id.* at ¶ 11.

[3] This is not to say that consideration of CCI's other contacts with Washington are irrelevant, as will be further explained below.

ORDER – 5

As to CCI's contacts related to her employment, Plaintiff relies primarily on the fact that she has, at all relevant times, resided in Washington, largely worked in Washington, negotiated her employment while she was in Washington, and was required to base her employment "out of a home office located in the Region." Dkt. #35 at ¶¶ 5–8. Conversely, Defendants note that Plaintiff does not establish that CCI actively solicited applicants from Washington or that CCI required Plaintiff to reside in Washington. Dkt. #36 at 5–7 (citing *Charlesworth v. Marco Manufacturing Co.*, 878 F. Supp. 1196 (N.D. Ind. 1995); *Gallert v. Courtaulds Packaging Co, Inc.*, 4 F. Supp. 2d 825, 830 (S.D. Ind. 1998)). The actual decision to hire Plaintiff was not made in Washington, but in New Jersey. Dkt. #18 at ¶¶ 1, 6; Dkt. #24 at ¶ 74. Plaintiff's employment agreement provided that the terms of the agreement and "the resolution of any disputes will be governed by laws of the state of New Jersey." Dkt. #18 at 10. And finally, many of the specific events giving rise to this action occurred outside of Washington. Dkt. #24 at ¶¶ 58–65.

Considered on the surface, case law would seem to support a conclusion that, on these facts, the Court lacks specific jurisdiction over CCI. A plaintiff can establish the first prong of specific jurisdiction under either the "purposeful availment" analysis or the "purposeful direction" analysis. Many Courts look mechanically to the Ninth Circuit's guidance that purposeful availment analysis generally applies in suits sounding in contract and that purposeful direction analysis generally applies in suits sounding in tort. *Schwarzenegger*, 374 F.3d at 802–03. Here, even though Plaintiff's claims arise under an employment contract, her discrimination claims appear more akin to tort actions. This would justify more of a purposeful direction analysis, which has been the focus of many recent cases. But the Court finds that those cases must be considered with reference to the specific events at issue.

ORDER – 6

Unquestionably, the Supreme Court explained that the purposeful direction analysis[4] should focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. Accordingly, CCI argues that it did not purposefully direct its actions in hiring or terminating Plaintiff toward Washington. Rather, CCI argues that it purposefully directed its employment activities only toward Plaintiff, who only happened to reside in Washington of her own unilateral volition. Dkt. #33 at 8–9. After all, the Supreme Court has cautioned that "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Similarly, the Ninth Circuit has cautioned that a "contract alone does not automatically establish minimum contacts in the plaintiff's home forum." *Picot*, 780 F.3d at 1212 (citations omitted); *see also Walden*, 571 U.S. at 289 (personal jurisdiction does not arise from defendant's knowledge of the plaintiff's "strong forum connections" and "foreseeable harm" within the forum).

Such a result would also appear consistent with several recent cases. *See e.g. Novak v. NanoLogix, Inc.*, No. 5:13-CV-01971-EJD, 2014 WL 991119, at *2 (N.D. Cal. Mar. 11, 2014) (out of forum client did not purposefully avail itself of California forum by hiring a California attorney to perform "patent work" with no indication that that work "would be directed at California residents, courts, or businesses"); *Coffey v. Mesa Airlines Inc.*, No. CV183688DMGPLAX, 2019 WL 4492952, at *6 (C.D. Cal. Apr. 15, 2019) (looking to broad wording in *Picot* and *Walden* to conclude that an out of forum airline employing a California resident as a pilot, providing the pilot flights from California to his Dallas work hub, and offering flights into and out of California—but not intra-California flights—did not purposefully avail

---

[4] A defendant purposefully directs activities at a forum if he: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. (quoting *Dole Food Co.*, 303 F.3d at 1111).

ORDER – 7

itself of or purposefully direct its actions to California); *Banks v. Am. Airlines*, No. 19-CV-04026-JSC, 2019 WL 5579479, at *4–5 (N.D. Cal. Oct. 29, 2019) (California resident's claims arising from her work as a flight attendant out of Arizona did not arise from defendant's contacts with California).

But the result seems wholly inappropriate here. CCI hired Plaintiff, a Washington resident, to work, at least in part, in Washington. An employer that intentionally hires an employee residing in a specific state to work in that, and other, states would certainly seem to form minimum contacts by invoking "the benefits and protections of" that state's laws. True, the employee presumably knows that the employment is with an employer located outside of the employee's state of residence. *See Walden*, 571 U.S. at 284 (noting that personal jurisdiction consideration protects the defendants' liberty, "not the convenience of plaintiffs and third parties"). Here, in fact, Plaintiff agreed that the contractual relationship be governed, by its terms, by New Jersey law and certainly received some indication she may be unable to sue the employer in her home forum. Nevertheless, the result seems overly formalistic.

The Ninth Circuit has cautioned, in fact, that tests related to personal jurisdiction are not to be applied rigidly or mechanically. *See Freestream Aircraft*, 905 F.3d at 605 (counseling against rigid application of the *Calder* effects test); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1173 (9th Cir. 2006) (counseling against a "mechanical checklist" approach to determining whether a defendant's contacts were "substantial and continuous"). Similarly, there is often no clear test to determine whether the purposeful availment analysis or purposeful direction analysis should be applied in any one case. *See Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1023 (N.D. Cal. 2015) (noting that "no case law . . . suggests that wage and hour claims may not be addressed under the purposeful availment approach" and considering defendants' contacts under both approaches). In fact, the Ninth Circuit has endorsed

ORDER – 8

a more holistic approach looking to "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The Court remains mindful that ultimately the inquiry remains whether a defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316.

In this case, the Court has little issue concluding that CCI maintained sufficient contact with Washington such that the exercise of personal jurisdiction does not offend fair play or substantial justice. CCI hired Plaintiff with knowledge that she lived within Washington, hired her in part to enter the regional market after prior attempts were unsuccessful, and tied Plaintiff's work to Washington. Dkt. #24 at ¶¶ 2–6. While Plaintiff was perhaps not technically required to reside and work in Washington—so long as she chose California, Oregon, or Alaska instead—Defendants cannot escape the practical fact that Plaintiff did live in Washington and did work for CCI in Washington. Further, at least a portion of Plaintiff's work in Washington was to further CCI's business interests with customers located in Washington. CCI purposefully availed itself of Washington.

The Court finds its conclusion entirely consistent with the approach other courts have taken. For instance, the Washington State Supreme Court has come to a similar conclusion as to the scope of its personal jurisdiction. *See Failla v. FixtureOne Corp.*, 181 Wash.2d 642, 336 P.3d 1112, *cert. denied*, 135 S. Ct. 1904 (2015) (employing a Washington resident to perform work in Washington constitutes the "transaction of any business within this state" under the state's long-arm statute and so jurisdiction was proper in Washington for wage claims arising from that employment, assuming fair play and substantial justice would not be offended). Other

ORDER – 9

courts within the Ninth Circuit, including this one, have come to similar resolutions. *See Hall v. L-3 Commc'ns Corp.*, 170 F.Supp.3d 1316, 1320 (E.D. Wash. 2016) (personal jurisdiction over out of forum employer that remotely recruited, interviewed, hired, employed, and paid Washington resident for claims related to that employment); *Hill v. Union Pac. R.R. Co.*, 362 F. Supp. 3d 890, 898 (D. Idaho 2019) (railroad had minimum contacts with forum to establish personal jurisdiction for injuries to forum resident employees, occurring outside of the forum, where employees were hired to perform work inside and outside of forum and reported for work assignments within forum). *See also Rosas v. Sarbanand Farms LLC*, No. C18-0112-JCC, 2019 WL 2394020, at *5 (W.D. Wash. June 6, 2019); *Senne*, 105 F. Supp. 3d 981 (N.D. Cal. 2015); *Sirois v. East West Partners, Inc.*, 285 F. Supp. 3d 1152 (D. Haw. 2018). Lastly, the result appears entirely consistent with the Ninth Circuit's recent approach to considering personal jurisdiction issues. *Freestream Aircraft*, 905 F.3d at 605 (9th Cir. 2018) (Ninth Circuit taking the "opportunity to clarify our case law," recounting numerous personal jurisdiction cases, and noting that it previously "reaffirmed [] 'that the "purposeful availment" requirement is satisfied if the defendant has taken deliberate action within the forum state'").

This same reasoning, however, does not carry over to establish personal jurisdiction over Nathan and Cerulli. These individual defendants establish that their contacts with Washington were not in their personal capacities but were related to their business obligations. As such, Plaintiff has not established the Court's personal jurisdiction over them both. *Kransco Manufacturing, Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981); *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir. 1978).

**B. Venue**

All that said, the Court does not find that the Western District of Washington is the appropriate venue for this action. Express provisions of Title VII govern where such an action

ORDER – 10

is to be brought. Specifically, 42 U.S.C. § 2000e-5(f)(3) provides federal district courts subject matter jurisdiction over Title VII actions and provides for venue in

> any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). Here, there is no dispute that the relevant decisions related to the unlawful practice occurred primarily in New Jersey and that the records relevant to the matter are maintained and administered in New Jersey.

The judicial district in which Plaintiff "would have worked," however, is less clear. Plaintiff's home office in Cle Elum is, in fact, within the Eastern District of Washington and she made sales visits in Northern California, Oregon, Washington, and Alaska. Because of the location of her home office and the numerous sales regions, the Western District of Washington cannot be considered the district in which Plaintiff primarily worked. If a single district is to be considered "the judicial district in which the aggrieved person would have worked," it should be the Eastern District of Washington where Plaintiff's home office is located. Regardless, the Western District of Washington is not an appropriate venue.

The Court is permitted to use its discretion to "transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The purpose of this statute is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation marks and citation omitted).

ORDER – 11

The burden is on Defendants to demonstrate that the transfer is warranted. *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1155 (C.D. Cal. 2005). "In making a decision to transfer, a court must balance the preference accorded the plaintiff's choice of forum with the burden of litigating in an inconvenient forum. The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Gherebi v. Bush*, 352 F.3d 1278, 1302 (9th Cir. 2003). In determining whether a transfer is appropriate, the Court may consider numerous factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. The Court may also consider the public interest in making its determination. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (enumerating certain "public factors").

Here, the Court's decision is not difficult. The only alternative district for which either party advocates is the District of New Jersey. This is unquestionably a venue in which this action "might have been brought" and is the location of much of the relevant evidence, witnesses, and events. Dkt. #33 at 12 (noting that 65 of CCI's 76 employees work in New Jersey and the relevant employment decisions were made in New Jersey). To the extent Plaintiff believes that her claims against Nathan and Cerulli are viable—a matter the Court does not reach—venue again appears appropriate in the District of New Jersey. To the extent Plaintiff believes that her New Jersey

ORDER – 12

state law claims[5] are viable—a matter the Court does not reach[6]—and to the extent the parties' employment agreement references New Jersey law, the District of New Jersey is the more appropriate venue as it will be more familiar with the applicable law.

As noted above, Plaintiff appears to have chosen the incorrect venue and regardless, Plaintiff has only weak contacts with the forum. She does not reside in the forum and merely traveled to the forum for sales meetings from which her claims do not arise. Activity occurring within this District is unlikely to carry much significance in this action and Defendants note that Plaintiff has not identified any witnesses from the forum relevant to her claims. Conversely, Defendants have strong contacts with New Jersey. Similarly, New Jersey is the one forum that Plaintiff knew was likely to be available when she entered into an agreement, referencing New Jersey law, with a New Jersey corporation. The Court finds the other factors to be largely neutral because of the parties' countervailing arguments.

Accordingly, the Court finds that this action most conveniently proceeds in the District of New Jersey and is not offended by the notion. This merely permits Plaintiff to pursue this action in the one forum that she knew was likely to be available—the one in which Defendant is located and the one referenced in the parties' employment agreement.

## IV. CONCLUSION

Having reviewed Plaintiff's First Amended Complaint, Defendants' Motion, the related briefing and evidence, and the remainder of the record, the Court hereby finds and ORDERS:

---

[5] The Court notes that Plaintiff has also raised claims under Washington law. But, as noted below, Plaintiff appears to have largely abandoned those claims in the face of Defendants' challenge and the employment agreement otherwise makes no reference to the laws of the State of Washington. Accordingly, the Court does not consider its experience with Washington law to be a significant factor at issue in this case.

[6] The Court does note, however, that Plaintiff appears to have largely abandoned her state law claims in response to the arguments raised by Defendants. *See generally* Dkts. #33 and #34.

ORDER – 13

1. Defendants' Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b), or, Alternatively, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #33) is GRANTED IN PART.
2. This action is hereby TRANSFERRED to the United States District Court for the District of New Jersey for further proceedings.
3. This case is now CLOSED.

Dated this 28 day of January, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 14